# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>**vs.**<br><br>**SHAMARKE IGAL,**<br>**aka Marke,**<br><br>**Defendant.** | **CASE NO. 2:20-CR-139(6)**<br><br>**JUDGE SARAH D. MORRISON** |

## SENTENCING MEMORANDUM OF THE UNITED STATES

The United States submits its Sentencing Memorandum regarding Defendant Sharmarke Igal, aka Marke, whose sentencing is set for August 27, 2021, at 2:00 p.m.  For the reasons below, the United States recommends that the Court impose a term of incarceration of 36 months, and a term of supervised release of three years.

### I.      BACKGROUND

In early 2019, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began an investigation into possible cross-border firearms trafficking from Ohio into Canada.  On August 19, 2020, following an extensive investigation, a federal Grand Jury in this District returned an Indictment charging eleven defendants, including Defendant Igal, in Count One with Conspiracy to Illegally Traffic Firearms, in violation of 18 U.S.C. § 371.  (*See United States v. O. Hassan*, et al., S.D. Ohio No. 2:20-cr-139, ECF No. 3, ¶ 1.)  And on November 19, 2020, a federal Grand Jury in the Southern District of Ohio returned an Indictment charging another defendant, Abdulwahab Sharif Mohamed Hassan, aka China, in Count One with Conspiracy to Illegally Traffic Firearms, in violation of 18 U.S.C. § 371, and in Counts 2 and 3 with violations of the federal straw purchase law, 18 U.S.C. § 922(a)(6).

On December 13, 2020, the Court joined these two cases. Together, both Indictments lay out a detailed conspiracy to obtain and stockpile firearms in the Southern District of Ohio for the purpose of illegally transferring them and selling them in Canada. As the Indictments explain, the co-conspirators obtained the firearms through both legal and illegal means, stockpiled them, packed them into a void in the front compartment of Toyota Camrys, recruited female drivers to shepherd the Camrys into Canada, followed the drivers into Canada, and then arranged for the sale of the firearms in Canada. On February 28, 2021, the defendant pled guilty to Count 1 (conspiracy to traffic the firearms, 18 U.S.C. § 371).

## II.  GUIDELINES RANGE/PRESENTENCE INVESTIGATION REPORT

The Probation Officer issued a final Presentence Report (PSR) on April 26, 2021. According to the PSR, the total offense level (TOL) is 29, which included the following:

- Base offense level: 18 (U.S.S.G. § 2K2.1(a)(5));
- Number-of-firearms enhancement: +6 (U.S.S.G. § 2K2.1(b)(1));
- Firearms trafficking: +4 (U.S.S.G. § 2K2.1(b)(5));
- Firearms left the U.S.: +4 (U.S.S.G. § 2K2.1(b)(6)(A)); and
- Less 3 points for acceptance of responsibility (U.S.S.G. § 3E1.1(b)).

The PSR further calculated the defendant's Criminal History (CH) Category as a I, with a resulting range of 87-108 months, which is statutorily restricted to 60 months. (PSR ¶ 100.) The Probation Officer did not identify any factors warranting departure from the guidelines range, though he did note some facts that may warrant a variance. (*Id.* ¶¶ 113-15.)

At this point, the defendant has one remaining objection to the PSR. The Government joins that objection. The PSR assessed the defendant with a base offense level of 18 because a number of the guns seized as part of the conspiracy were equipped with Glock conversion switches; these conversion switches make an otherwise semiautomatic handgun into an automatic handgun. (*See,*

*e.g.*, PSR ¶¶ 45, 58.)  The PSR accurately lays out the facts at play in this case.  Nevertheless, the Government agrees that the base offense level should be a 12.  The parties did not contemplate a base offense level of 18 during the negotiation and resolution of the plea agreement.  Moreover, any discovery underpinning the facts that could be used to support a base offense level of 18 was not part of the initial rounds of discovery in this case; and the discovery that drove the parties' plea discussions and ultimate resolution of this case did not include information about Glock switches. Finally, the Government has agreed with all other objections on this issue in the context of the PSRs of the defendant's co-defendants. It would be unjust to proceed differently in this instance. For these reasons, the Government joins the defendant's objection regarding the base offense level.

If the Court agrees with the parties, the defendant's total offense level comes out to a 23. With a CH of I, this would net an advisory Guidelines range of 46-57 months.  The parties have entered into a Rule 11(c)(1)(C) plea agreement, which contains an agreed upon sentencing range of 0-46 months; the United States asks this Court to accept the plea agreement and sentence the defendant to a term of imprisonment of 36 months.

### III.    ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

Sentencing requires a determination of the applicable guideline range, whether a departure is appropriate, and a consideration of the factors in 18 U.S.C. § 3553(a).  *See Gall v. United States*, 552 U.S. 38, 49–50 (2007).  Under this analysis, the Government submits for the following reasons that a term of incarceration of 36 months, and a term of supervised release of three years, is fair under the circumstances.

A. **Nature and Circumstances: Transnational Gun Trafficking Is a Serious Crime that Puts Lives in Danger**

A single straw purchase or illegal transfer of a firearm is "a callous and extreme risk to public safety." *United States v. Daniells*, No. 15-10150, 2017 WL 2256988, at *4 (D. Mass. May 23, 2017). The illegal transfer of a firearm is a callous and dangerous act because guns are inherently dangerous, and guns in the hands of people who shouldn't have them is even more dangerous. It is a callous and dangerous act because it skirts the regulatory framework in place to track and monitor the sale and re-sale of dangerous guns. *See United States v. Arzu*, No. 5:07 CR 166, 2007 WL 2713908, at *3 (N.D. Ohio Sept. 17, 2007) (noting that "[t]he access to firearms through illegal channels is a problem for law enforcement of immense p[ro]portions," which, in part, justifies "a sentence at the highest level of the advisory Guidelines range"). And it is a callous and dangerous act because it entails a fundamental lack of care about what happens with the guns afterwards—or to the people they hurt or even kill.

The circumstances of this case are aggravated beyond even a run-of-the-mill straw purchase or illegal transfer. First, there wasn't just one straw purchase or transfer of a gun to someone who shouldn't have it. The defendant was involved in a conspiracy in which numerous guns were transferred to people who shouldn't have them. Stated another way, the defendant's conduct significantly amplified the potential danger of an illegal firearms transfer. *See United States v. Elsaddique*, 252 F. App'x 992, 993 (11th Cir. 2007) ("[The defendant] used a false name to purchase three firearms. The act alone creates a significant danger to the public, which is only increased by the possibility that he made the purchase on someone else's behalf—someone who may have had a more serious and more recent criminal history.").

4

This case also involves the transnational bulk transfer of firearms, which takes it out of the rubric normally applied to a standard straw-purchase case. In this instance, Canada has seen fit to regulate firearms much more stringently than America. Fewer people have guns and fewer people can buy them. When guns from America illegally flood into Canada, our country's issues with gun violence get passed onto a neighboring country that desperately does not want them—for all the reasons laid out above. In the course of this case, the investigation further revealed that the mark-up for illegally purchased firearms can be significant in Canada—often more than five times, and up to 25 times, the retail value of the guns in the States. This represents a lucrative, difficult-to-track black market that is now creating dangers for Canadian citizens and law enforcement. The authorities in Canada also made clear during the investigation that the illegal proliferation of guns into their country was an ever-growing problem that Canadian law enforcement was working furiously to stem. Ohio, in fact, has become a priority for them, as the authorities in Canada indicated that Ohio is the number one source state for firearms recovered in crimes in Canada.

The Government respectfully submits that a sentence of 36 months is appropriate given the serious nature of the conduct at issue, and given the aggravating factors present.

**B. History and Characteristics: The Court Should Take into Account the Defendant's History of Police Encounters and His Using and Selling Drugs**

The Government anticipates arguments from the defendant at sentencing that point to his minimal criminal history as reason for mitigation. In the normal course, that might carry some weight. It should carry less weight here. The nature of this case undermines any such arguments. Being involved in a conspiracy in which numerous firearms were trafficked to another country is serious, inherently dangerous conduct.

5

Moreover, although it is accurate that the defendant is a CH I, the defendant's prior conviction is serious, and his pending charges are serious as well.  The defendant was convicted of attempted deception to obtain a dangerous drug and failure to comply with a police officer.  He has an outstanding warrant for a probation violation, wherein he failed two drugs screens, failed to call in for a drug screen, failed to complete a substance abuse assessment and treatment, and failed to complete a mental health assessment and treatment.  Moreover, the defendant has pending charges for improper handling of a firearm and procuring dangerous drugs by deceit, and he had numerous more arrests for prescription drug-related incidents.  The defendant's criminal history demonstrates the need for a sentence that will promote the defendant's respect for the law and the legal system, something that seems to have been missing up until now.

His criminal history also shows the defendant's extreme issue with substance abuse.  The United States hopes that his pretrial detention period, coupled with an additional term of incarceration, wherein the defendant can obtain substance abuse treatment (which, encouragingly, the defendant has requested), will assist him in obtaining and maintaining sobriety.

### C. Unwarranted Sentencing Disparities: The Defendant Was Heavily Involved in the Conspiracy

This is a large transnational firearms-trafficking crime, with guns that ended up in the hands of serious criminals in Canada.  This case involved 25-99 firearms.   Fourteen defendants were charged; 13 have now pled.  This defendant was an integral part of the conspiracy.  As with all conspiracies, the success of the conspiracy is reliant on the conspiracy members doing their parts, and the defendant's involvement in this conspiracy was extensive.  As provided in the PSR, "[t]he defendant's involvement in the conspiracy included participation in multiple meetings with coconspirators during the course of the conspiracy regarding the logistics of the firearms

6

trafficking.   Additionally, [the defendant] assisted in purchasing multiple firearms for the conspiracy, and then in organizing those firearms into loads to be taken into Canada.   The defendant recruited accomplices to drive his Toyota Camry in furtherance of the conspiracy, specifically, for carrying loads of firearms into Canada and bringing U.S. currency back into the United States."  (PSR ¶ 50.)

Based on the above, the Government sees the defendants in this case falling into two tiers of culpability—an upper tier and a lower tier.  The Government views the defendant as falling in the middle of the lower tier.  The defendant's sentence should reflect the seriousness of the offense and the seriousness of the defendant's role in it.

## IV.    <u>CONCLUSION</u>

The defendant knowingly participated in a conspiracy to traffic a large number of guns to Canada.  The circumstances indicate that he knew the guns would be put into the hands of dangerous individuals.  Moreover, the defendant was involved in illegal firearms possession, and he was illegally obtaining and using drugs, during the time he was involved in the conspiracy.  For these reasons, the Government submits that a term of incarceration of 36 months, and a term of supervised release of three years, would be sufficient but not greater than necessary to further the ends of sentencing.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney

*s/Kelly A. Norris*
KELLY A. NORRIS (0081254)
S. COURTER SHIMEALL (0090514)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
Fax: (614) 469-5653
E-mail: Kelly.Norris@usdoj.gov
E-mail: Courter.Shimeall@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was served this 20th day of August, 2021, electronically upon all counsel of record for Defendant Shamarke Igal, aka Marke.

*s/Kelly A. Norris*

KELLY A. NORRIS (0081254)
Assistant United States Attorney
